The opinion of the Court was delivered by
RICHARDSON, J.
I will first notice the minor grounds of the motion. It is not denied that the justices had taken the oaths of office before two justices, (one of the quorum,) agreeably to the Act of 1800, 2 Faust, 360.[4] But the Act of December, 1819, enacts, that thereafter “ all justices, &c., now in commission, who have not qualified before the governor, shall, within ninety days after the passing of this Act, qualify before the clerks,” &c.[5]
It might be said, with great reason, that this Act cannot embrace justices who had been duly qualified under the Act of 1800, and who were truly in commission at the time of passing the Act of December last, but must have been intended to give a second opportunity of qualifying, to certain justices, who had erroneously taken the oaths of office before some one of the judges, or other magistrate, and not before either the governor, according to the Act of 1778, or before two justices, according to that of 1800, either of which would have been sufficient.
In the case of the State v. Hayward, (1 Nott & M’Cord, 546,) for perjury, it appeared, on the part of the State, that the justice, before whom the oath had been taken, had himself taken the oaths of office *before a single judge only, instead of the governor, or of two r*oKo justices under the Acts before noticed, whereupon it was decided L that perjury could not be predicated of the swearing, however false. *588 Prom this decision there appears to have arisen a notion, that justices must have qualified before the governor; and hence probably the peculiar phraseology of the Act of December last, i. e., “ who have not qualified before the governor,” &c., as if the Act of 1800 had been laid aside. Surely the Act could not have been intended to disfranchise men duly in office, though they had not qualified before the governor; but was evidently to reinstate such as had taken the oaths irregularly. Now the justices before us had taken the oaths of office, duly and properly, under the Act of 1800; and through abundant caution, they again qualified before the clerk, under the Act of December last, and within the ninety days prescribed, i. e., the one on the 19th January, and the other on the 16th March, (a)
Again, the condemnation which is to be carried into effect now, was made before the Act of December last; and the sentence was finally pronounced since the justices qualified under that Act, i, e., in April. Admitting, then, that the pronunciation of the sentence in January was a nullity, as being before their qualification, under the Act of December, yet passing the sentence in April, being after such second qualification, was legal, and under that view had become indispensable.
L.et us now inquire, if the office of a justice cannot exist, unless he has signed the roll under the Act of 1118.
The words of this Act are, &e., “ shall, at the time of qualification, sign a roll, which shall be lodged in the secretary’s office, that all persons may resort thereto for their information, and thereby discover who are acting magistratesand then proceeds to inflict a penalty upon such as take upon themselves to act without complying with such directions. But this Act does not make the signing the roll a condition precedent to going int0 office ; though it very wisely *holds out the terror of -I punishment for neglecting to sign it.
I will now turn to the most important question made in the case : is a commission indispensable in order to discharge the duties of a public office ? All that we find in the constitution upon the subject, is in the 3d sec. of the 8th art-., to wit: “ All commissions shall be in the name, and by the authority of the State of South Carolina, to be sealed with the seal of the State, and be signed by the governor.”
In the 6th article the oath of office is prescribed, preceded by the following absolute requisition, to wit: “All persons who shall be chosen or appointed to any office of profit or trust, before entering on the execution thereof, shall take the following oath, &c. Mark the distinction; the oath is required to be taken before entering upon the discharge of official duties, while commissions are noticed, only bearing a certain style of authority, and the seal of State, and to be signed by the governor. Here so much is left to construction, that it might suffice to say, at least as it regards justices of the peace, that no commission having been ever issued to any of them since the constitution of 1191, if before, such long practice presupposes a rational foundation. And such uniformity, from the adoption of the constitution, must, upon a question of any uncertainty, have somewhat of the weight of cotemporaneous expositions. For a construction thus placed by long usage, in such a case as this, conveys the impression that the opinions of the skilful had been obtained for its *589 sanction. To change it, would be, at least, inconvenient, and might annul the procedings of every justice in the State. The constitution is no more than a recognition of general priciples ; but they often require an explanation of their true import, which is to be found in judicial decisions, legislative expositions, and received practice. These explain and illustrate, and finally fix one precise understanding; without which, words are too variable, and general principles too easily perverted to be. *relied upon. But is it not at least doubtful, whether a commission is not essential to the discharge of official duties generally ? L b We take our principles, and derive our theory from the English common law. Let us regard it, but principally its reason. Commissions, it is said, must be by deed, (2 Salk. 536,) and words of creation must be used, as constituimus, &c. 16 Yiner, 102. Its general definition is the warrant, or letters patent, which authorize the nominee to act or determine. The same as delegatio, in the civil law, (see title Commissioner and Officer, in Jacob and Yiner,) and at common law, the commission ceases with the demise of the king. Dyer, 289. In England, the king may command the services of every subject. 1 Salk. 168. He is the head of the church, the fountain of honor, and the source of judicial and ministerial power. He is the universal officer from whom all offices are said to be derived. 12 Co. 116. 1 Rol. 206. 1 Black, tit Prerogative. This is strictly the English common law theory. Eor instance, from the Aula Regis, he parcelled out his judicial functions ; and from the executive chair, he continues to delegate his ministerial powers. Every office there emanates then from this effusive regal source, and every officer, even the prime minister, whom one might fairly deem the true executive, is but the Phaeton of his day. •
JRogers, for the motion. Williams and Nott, contra.
Regarding, then, the common law, we easily perceive why a commission may be essential under the English government. There, in a word, it is at once the expression of the royal will, and the partial delegation of his power. There, for the purposes of his office, the officer is the agent of the king, and the commission is his letter of attorney, wherein he finds his power, of what kind, and to what extent. But take away the reasons, and the same consequences do not follow. • In this country the officer derives no power from the chief magistrate. In this State, indeed, he has not much to spare; and the commission becomes the mere certificate of election, or the formal annunciation of appointment. And the incumbent, both in* theory and practice, is to regard the constitution and laws of the people, whose minister he is, as his only ■- b letters of attorney. Here, then, the commission constitutes no part of the authority or qualification of an officer, and in a question upon his functions or immunities, has as little to do as the mode of conveyance through which the commission may be sent to him. See 1 Cranch, Marbury v. Madison. And the true constitutional qualification, I mean the oath of office, may be taken before or after, and has no essential relation to, or dependence upon, the commission.
The motion is, therefore, dismissed.
Johnson, Colcock, ISTott and HtjgbR, JJ., concurred.
Gantt, J., dissented.
See 7 Rich. 225.

 5 Stat. 381, § 5.

 6 Stat. 116 Stat. 13, 2 2. 3 rH •Ú g 02

 1 Harp. 101.